IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-00722-WDM-MJW

SONYA DIAS, *et al.*,

      Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, COLORADO *et al.*,

      Defendants.

---

## ORDER ON MOTION TO DISMISS

---

Miller, J.

      This matter is before me on Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) (Docket No. 16). After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion shall be granted.

## Background[1]

      This is a case about a Denver City Ordinance pertaining to pit bulls (the "Ordinance"). In essence, in May 2005, Denver re-instituted a city ordinance banning pit bull ownership within the city limits. The Ordinance covers American Staffordshire Terriers, American Pit Bull Terriers, Staffordshire Bull Terriers, and any animal displaying "the majority of physical traits of anyone [sic] (1) or more of the above

---

      [1] All relevant facts are taken from the Complaint or Plaintiff's Response to the Motion to Dismiss.

PDF Final

breeds, or any dog exhibiting those distinguishing characteristics which substantially conform to the standards established by the American Kennel Club or the United Kennel Club for any of the above breeds." In the present case, Plaintiffs[2] are challenging the Ordinance on constitutionality grounds including that the Ordinance violates their procedural due process rights because it allows for seizure of dogs without a prior hearing. Plaintiffs also allege that their procedural due process rights are violated by the City and County of Denver's (the "City") unwritten policies of summarily executing dogs whose owners have previously been cited under the Ordinance, coercing waivers of due process protections and the privilege against self-incrimination, and using the coerced, self-incriminating statements to encourage guilty pleas and/or discourage jury trials. Plaintiff's second claim for relief alleges that the Ordinance is unconstitutionally vague. The third claim for relief alleges that the Ordinance violates equal protection because self-incriminating statements are coerced from dog owners who do not request an administrative hearing but are not coerced from those that do request such a hearing. Fourth and finally, Plaintiffs allege that the Ordinance violates substantive due process because dogs are taken without any evidence that the particular dog presents a public safety threat.

When the statute was first instituted, a number of interested parties and organizations brought a similar case in state court claiming that the Ordinance was

---

[2] The named Plaintiffs in this case are Sonya Dias, Hillary Engel, and Sheryl White. Plaintiffs have submitted a motion to certify class (Docket No. 36) which has not yet been ruled on. The motion to certify seeks certification of a class of dog owners who have had their dog seized by Defendants under the Ordinance.

unconstitutional. *The Colo. Dog Fanciers, Inc. v. City & County of Denver*, 820 P.2d 644 (Colo. 1991) (hereinafter *Colo. Dog*). In *Colo. Dog*, the Colorado Supreme Court upheld the Ordinance against a variety of constitutional claims.

<u>Standard of Review</u>

Defendants' motion to dismiss raises both Fed. R. Civ. P. 12(b)(6) challenges and jurisdictional challenges under Fed. R. Civ. P. 12(b)(1). Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move for dismissal of Plaintiffs' procedural due process claim that the Ordinance denies them a pre-seizure hearing, vagueness claim, equal protection claim, and substantive due process claim. A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

Defendants move for dismissal for lack of jurisdiction of Plaintiffs' procedural

due process claims that the ordinance denies them due process by summarily executing dogs, coercing waivers of due process rights and the privilege against self-incrimination, and using allegedly coerced statements to encourage guilty please or discourage jury trials.  A plaintiff who sues in federal court has the burden of establishing federal jurisdiction to hear the claim.  *See  Marcus v. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) ("Because the jurisdiction of federal courts is limited, 'there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.'" (quoting *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991))).  Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can be in one of two forms.  *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003) (citing *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)).  First, the moving party may "facially attack the complaint's allegations as to the existence of subject matter jurisdiction."  *Id.*  "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  Second, the moving party may "go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Maestas*, 351 F.3d at 1013 (citing *Stuart*, 271 F.3d at 1225).  In this case, "a district court may not presume the truthfulness of the complaint's factual allegations."  *Holt*, 46 F.3d at 1003.  Rather, the court may look to affidavits and other documents outside the pleadings and such

reliance does not convert the motion to a Rule 56 motion for summary judgment. *Id.*

Discussion

Defendants's motion to dismiss includes a variety of arguments including issue preclusion,[3] standing, and failure to state a claim upon which relief can be granted. Defendants argue for dismissal of each of Plaintiffs' four claims for relief. I will first address issue preclusion and then, in turn, address the arguments corresponding to each claim for relief.

1.    <u>Issue Preclusion</u>[4]

"The federal courts are required by the full faith and credit provision of 28 U.S.C. § 1738 (1982) to 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was

---

[3]  "Issue preclusion" is also referred to as "collateral estoppel;" indeed, the terms are "often used interchangeably to refer to the doctrine that says: 'the final decision of a court on an issue actually litigated and determined is conclusive of that issue in any subsequent suit.'" *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007). In this Order, I will refer to this doctrine as issue preclusion.

[4]  Both Defendants and Plaintiffs use the terms "issue preclusion" and "claim preclusion" interchangeably. These are, however, two separate and distinct doctrines. *See Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1135–36 (10th Cir. 2004) ("Res judicata doctrine encompasses two distinct barriers to repeat litigation: claim preclusion and issue preclusion." (citing *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 n.5 (1998))). "Claim preclusion bars a party from relitigating a claim or cause of action on which final judgment has been rendered. *Id.* at 1136. "In contrast to claim preclusion, issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Id.* As both parties' briefs consistently discuss the factors associated with issue preclusion rather than claim preclusion, I construe all references to either issue preclusion or claim preclusion as referring to issue preclusion. I note, however, that claim preclusion would not be applicable here for largely the same reasons that issues preclusion is inapplicable, as discussed below.

rendered.'" *Bolling v. City & County of Denver*, 790 F.2d 67, 68 (10th Cir. 1986)

(quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)).

Generally, issue preclusion "bars a party from relitigating an issue once it has

suffered an adverse determination on the issue, even if the issue arises when the

party is pursuing or defending against a different claim." *Park Lake*, 378 F.3d at

1136; *accord In re Tonko*, 154 P.3d at 405. The required elements for issue

preclusion are:

> (1) the issue previously decided is identical with the one presented in the
> action in question, (2) the prior action has been fully adjudicated on the
> merits, (3) the party against whom the doctrine is invoked was a party, or
> in privity with a party, to the prior adjudication, and (4) the party against
> whom the doctrine is raised had a full and fair opportunity to litigate the
> issue in the prior action.

*Park Lake*, 378 F.3d at 1136; *accord Nicols v. Bd. of County Comm'rs*, 506 F.3d 962,

967 (10th Cir. 2007) (discussing Colorado law). "The party seeking collateral

estoppel has the burden of establishing each of these elements." *Nicols*, 506 F.3d at

968.

With respect to the third element, privity, it "requires, 'at a minimum, a

substantial identity between the issues in controversy and showing that the parties in

the two actions are really and substantially in interest the same.'" *United States v.

Power Eng'g Co.*, 303 F.3d 1232, 1240 (10th Cir. 2002) (quoting *Lowell Staats Min.

Co, Inc. v. Phila. Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989)). In other words,

"[p]rivity between a party and a non-party requires both a substantial identity of

interests and a working or functional relationship . . . in which the interests of the

non-party are presented and protected by the party in the litigation." *In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d 660, 668 (Colo. 2006) (internal quotations omitted). The Colorado Supreme Court requires "a substantial identity of interests between a party and a non-party such that the non-party is virtually represented in [the prior] litigation." *Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy*, 142 P.3d 1265, 1281 (Colo. 2006); *accord Public Serv. Co. of Colo. v. Osmose Wood Preserving, Inc.*, 813 P.2d 785, 787 (Colo . Ct. App. 1991).

In this case, Defendants allege that all of Plaintiffs' claims should be barred by the doctrine of issue preclusion because *Colo. Dog* upheld the Ordinance after a constitutionality challenge by parties not involved in the current litigation. To support this claim with respect to privity, Defendants first alleged that the Plaintiffs in this action were in privity with the governmental defendants in *Colo. Dog.* This, however, is not sufficient to meet the requirements of privity as the interests of Plaintiffs in this case were not "presented and protected" by the governmental defendants in *Colo. Dog*—in fact, the governmental defendants in *Colo. Dog* advocated for the opposite position than Plaintiffs in this case. *In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d at 668. Apparently realizing this mistake, Defendants argue in their reply brief[5] that there is privity because "[a]ll dog owners and their interests were adequately represented as plaintiffs in [*Colo. Dog*.]" (Reply at 2.) Plaintiffs respond that they are not bound by *Colo. Dog* because that case was not a class action purporting to bind

_____

[5] Because Defendants first raised this argument in their reply brief, Plaintiffs were allowed leave to submit a surreply (Docket No. 34-2).

non-parties citing *Richards v. Jefferson County, Ala.* *See* 517 U.S. 793, 801–02 (1996) ("Because [plaintiffs in the current action] and [plaintiffs in the prior action] are best described as mere 'strangers' to one another, we are unable to conclude that the [plaintiffs in the prior action] provided representation sufficient to make up for the fact that [plaintiffs in the current action] neither participated in, nor had the opportunity to participate in [the prior action]." (citations omitted)).

I conclude that Defendants have not satisfied their burden to demonstrate application of issue preclusion. Although it may appear that the plaintiffs in *Colo. Dog* previously asserted and litigated the same claims as Plaintiffs, Defendants have not shown that Plaintiffs in this action are in privity with the plaintiffs in *Colo. Dog.* In particular, Defendants have failed to show either a "substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation," *In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d at 668, or that Plaintiffs were "virtually represented" in *Colo. Dog*, *Natural Energy Res. Co.*, 142 P.3d at 1281. Indeed, to show privity, Defendants merely state that the rights of Plaintiffs were adequately represented in the earlier litigation and that to state that the interests of the two sets of plaintiffs are different "is to ignore the issues and interests raised and litigated in" *Colo. Dog.* Such conclusory allegations, however, do not satisfy the privity requirement. Furthermore, just as in *Richards*, Plaintiffs and the plaintiffs in *Colo. Dog* are mere strangers and Plaintiffs did not participate in nor have the opportunity to participate in the earlier litigation. *See* 517 U.S. at 801–02 (noting that the earlier litigation did

not purport to be a class action nor bind members of the public). Therefore, I conclude that Plaintiffs' case is not barred by the doctrine of issue preclusion.

2. Procedural Due Process

Plaintiffs allege that a number of activities relating to the Ordinance violate their procedural due process rights including: (1) seizure of dogs without a prior hearing; (2) Defendants' unwritten policy of summarily executing dogs when the owner has previously been cited under the Ordinance; (3) Defendants' unwritten policy of coercing waivers of due process protections; (4) Defendants' unwritten policy of coercing waivers of the privilege against self-incrimination; and (5) Defendants' unwritten policy of using coerced, self-incriminating statements to encourage guilty pleas and/or discourage jury trials. Defendants argue that all of these claims should be dismissed.

a. *Pre-seizure Hearing*

First, Defendants argue that any claim based on the deprivation of a pre-seizure hearing should be dismissed because both the Colorado Supreme Court in *Colo. Dog*, 820 P.2d at 650 and *Thiele v. City & County of Denver*, 312 P.2d 786 (1957), and the Tenth Circuit in *Clark v. City of Draper*, 168 F.3d 1185, have held that a post-seizure hearing is sufficient. Plaintiffs respond that dismissal is not warranted and a pre-seizure hearing is required under the Due Process Clause. In support, they argue that (1) Defendants "overlook or misrepresent U.S. Supreme Court and Tenth Circuit Authority"; (2) the level of process due to Plaintiffs must be determined by a case-specific factual inquiry; and (3) the *Mathews v. Eldridge*, 424

U.S. 319 (1976), balancing test leads to a conclusion that a pre-seizure hearing is necessary. (Resp. at 5.) I do not find Plaintiffs arguments persuasive and conclude that a post-deprivation hearing is constitutionally adequate.

In *Clark*, after engaging in a *Mathews v. Eldridge* balancing test, the Tenth Circuit held that a post-deprivation, but pre-destruction, hearing was adequate for seizure and destruction of foxes to test for rabies. 168 F.3d at 1189. The court first considered the property interest that the owner had in the animals:

> At the turn of the century, both the United States Supreme Court and the Supreme Court of Utah[6] held that property in domesticated canines is subject to the state's police power for the protection of its citizens. *See Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 700–04 [(1897)]. . . . In this century numerous other states have upheld this description of property in domesticated canines. *See, e.g., Thiele*, [312 P.2d at 789]. . . . As the Supreme Court of Michigan has noted, however, '[w]hether the property in dogs is regarded as qualified or absolute, they are subject to the police power of the state, and may be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens.' *People v. Yeo*, 103 Mich. App. 418, 302 N.W.2d 883 (1981) (quoting *Bugai v. Rickert*, 258 Mich. 416, 242 N.W. 774, 774 (1932)).

*Clark*, 168 F.3d at 1188 (some internal citations omitted). The court went on to hold that "[a]lthough normally a property owner is entitled to a predeprivation hearing, where, as in this case, the state must act quickly, a meaningful postdeprivation hearing is adequate." *Id.* at 1189. Furthermore, although not controlling, the Colorado Supreme Court held in both *Colo. Dog* and *Thiele* that a post-seizure

---

[6] The Colorado Supreme Court has also held that domesticated dogs are accorded only "qualified property status" and are "subject to the proper exercise of police power for the protection of the public's health, safety, and welfare." *Colo. Dog*, 820 P.2d at 653 (citing *Thiele*, 312 P.2d at 789 and *Stone v. Mississippi*, 101 U.S. 814, 818 (1879)).

hearing was constitutionally adequate. *Colo. Dog*, 820 P.2d at 650 (addressing the Ordinance); *Theile*, 312 P.2d at 791 (addressing a dog-at-large statute).

The same concerns that were present in *Clark*, *Colo. Dog*, and *Theile* are present in the current case, that is, public health and safety. First, dogs have been determined by both the United State Supreme Court and the Colorado Supreme Court to be "subject to the state's police power for the protection of its citizens." *Clark*, 168 F.3d at 1188 (citing *Sentell*, 166 U.S. at 700–014); *Colo. Dog*, 820 P.2d at 653 (citing *Theile*, 312 P.2d at 789 and *Stone*, 101 U.S. at 818). Acting under this police power, the Ordinance prohibits ownership, possession, etc. of pit bull dogs within the city to protect the public from what has been deemed to be a dangerous dog. Therefore, and in light of these cases, I conclude that, as a matter of law, Plaintiffs have not alleged sufficient facts to assert a claim based on the lack of a pre-deprivation hearing as the controlling case law clearly holds that a post-deprivation hearing is adequate when the "state must act quickly."[7] Therefore, Plaintiffs' procedural due process claim based on a lack of a pre-seizure hearing shall be dismissed.

      b.    *Unwritten Policies*

Defendants next argue that Plaintiffs do not have standing to bring any of their remaining procedural due process claims. Standing under Article III is a

---

[7] Plaintiffs argue that *Thiele* can be distinguished because there is no safety concern when dogs are "secured inside their owners' homes or yards" rather than "off leash." This argument, however, does not address the fact that the Ordinance and *Colo. Dog* are based on the premise that pit bull dogs are dangerous animals. Therefore, this distinction does not change my conclusion.

jurisdictional requirement and, therefore, must be addressed prior to proceeding to the merits of a case. *Robey v. Shapiro, Marianos & Cejda, LLC*, 434 F.3d 1208, 1211 (10th Cir. 2006). To meet the constitutional requirements of standing, the party asserting federal jurisdiction bears the burden of proving:

> (1) 'injury in fact,' by which we mean an invasion of a legally protected interest that is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury 'fairly can be traced to the challenged action of the defendant,' and has not resulted 'from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the 'prospect of obtaining relief from the injury as a result of a favorable ruling' is not 'too speculative.'

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663–64 (1993) (citations omitted). An injury "must be 'concrete in both a qualitative and temporal sense'" and "distinct and palpable." *Finstuen v. Crutcher*, 496 F.3d 1139, 1143 (10th Cir. 2007). Furthermore, "[i]n a plea for injunctive relief, a plaintiff cannot maintain standing by asserting an injury based merely on 'subjective apprehensions' that the defendant might act unlawfully." *Id.* at 1144 (quoting *City of L..A. v. Lyons*, 461 U.S. 95, 107 n.8 (1983)). However, although [a]llegations of possible future injury do not satisfy the injury in fact requirement, . . . a plaintiff need not expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087–88 (10th Cir. 2006) (internal quotations and citations omitted).

In this case, Defendants are correct in noting that no named plaintiff has

actually suffered the harms upon which Plaintiffs base their claims. Indeed, no dog was executed, no plaintiff waived her rights to either due process protections or the self-incrimination privilege,[8] and no plaintiff has entered a guilty plea or foregone a jury trial as a result of an allegedly coerced self-incriminating statement.[9] However, Plaintiffs argue that Ms. White faces a "credible threat" of being subjected to these allegedly unconstitutional actions by Defendants. In support, Plaintiffs cite to *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1229 (10th Cir. 2005). *Pac. Frontier*, however, deals with the chilling effect on a statute allegedly curbing First Amendment rights and, therefore, is not applicable here.[10] *Id.* Nevertheless, a

_____

[8] The complaint does allege that Mr. White, Ms. White's husband, was "required" to sign a form stating that Ms. White's dog was a pit bull before he could get the dog released from the City of Denver. However, Mr. White is not a party to this litigation. Furthermore, even after he was "required" to sign the statement, Mr. White was granted a hearing to determine whether the dog was a pit bull.

[9] Although Defendants' motion does not address Plaintiffs' standing to assert a claim that their due process rights were violated by encouragement of guilty pleas or discouragement of jury trials, I will also address this claim as it is jurisdictional question. *See San Juan County, Utah v. United States*, 503 F.3d 1163, 1171 (10th Cir. 2007). "Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 514 (2006)); *Harris v. Ill.-Cal. Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982) ("Any federal court must, *sua sponte*, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding, and the court is not bound by the acts or pleadings of the parties." (citations omitted)).

[10] Claims challenging a law on First Amendment grounds are unique in that a plaintiff may have standing in such an action "if he or she alleges an intention to engage in" a prohibited action and thus faces prosecution or if "a plaintiff who faces a credible threat of future prosecution suffers from an 'ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights.'" *Ward v.*

credible threat of prosecution may be sufficient to challenge an allegedly unconstitutional statute. *See Walker*, 450 F.3d at 1087–88 (holding that a person need not be charged with an unconstitutional statute to challenge its constitutionality). It should be noted, however, that Plaintiffs in this case are not challenging the statute itself, but rather, are challenging Defendants' unwritten policies of engaging in allegedly unconstitutional behavior. Therefore, to satisfy the injury in fact requirement in a claim for injunctive relief, Plaintiffs must allege more than an conjectural or hypothetical injury or subjective apprehension that Defendants will act unlawfully in the future. *See Finstuen*, 496 F.3d at 1143.

In this case, Plaintiffs cannot demonstrate a credible threat that Defendants will take these actions against them in the future. Indeed, Plaintiffs have provided no factual allegations that any plaintiff in this case faces more than a subjective apprehension of an injury. Both Ms. Dias and Ms. Engel live outside the City of Denver and, therefore, are beyond the reach of the Ordinance. Although Ms. White continues to live in the City of Denver with her dog, all charges against her have previously been dismissed. Furthermore, there are no allegations that support an allegation that Defendants have an unwritten policy of engaging in constitutional violations—there is no written policy for such actions nor have Plaintiffs articulated a

_____

*Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003). But, even in the First Amendment context, "while the rules for standing are less stringent for a facial challenge to a statute, a plaintiff must still satisfy the injury-in-fact requirement." *PETA v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002). *Id.* Plaintiffs have not cited nor am I aware of any case law that recognizes the same conjectural injury in a procedural due process context. Therefore, *Pac. Frontier* is inapplicable here.

history of the allegedly unconstitutional behavior by Defendants.  The only allegation in the pleadings that hints at an unwritten policy is the allegation that Mr. White was "required" to sign a statement acknowledging that Ms. White's dog was a pit bull.  However, the Whites were granted a hearing and the statement was not used to demonstrate that the dog was a pit bull.  Furthermore, there are no allegations that this was an action in which Defendants continually engaged and, therefore, no indication that Plaintiffs face a credible threat of the harm in the future.  Therefore, I conclude that Plaintiffs do not have standing to move forward with their procedural due process claims based on any of Defendants' alleged unwritten policies.

3.    <u>Vagueness</u>

Plaintiffs challenge the Ordinance on its face as unconstitutionally vague.  They argue that Ordinance's ban on dogs that have "the majority of physical traits" of one of the enumerated prohibited dogs fails to put provide dog owners with fair warning of which dogs are covered by the ban.  Plaintiffs allege that a dog owner, to know if her dog was covered by the ordinance, would need to "understand the distinctive characteristics" of each of the prohibited breeds as well as "imagine how the traits of the three prohibited breeds would appear in seemingly endless combination[s]."  (Resp. at 13.)  Defendants argue that this claim must be dismissed because *Colo. Dog* and other cases have held that pit bull ordinances are not unconstitutionally vague.  Plaintiffs respond simply that none of the cases cited by

Defendants are controlling and that the Ordinance is unconstitutionally vague.[11]

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted); *accord Hill v. Colorado*, 530 U.S. 703, 732 (2000) ("A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."). Under the fair warning aspect of the vagueness doctrine, a law "fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–03 (1966). To be sustained, a complaint must allege that "an enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 n.7 (1982) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). Under the discriminatory and arbitrary enforcement aspect of the doctrine, a statute must

---

[11] Plaintiffs also discuss (1) whether internal guidance is sufficient to make a facially vague statute constitutional and (2) whether a trial remedies an overbroad statute. (Resp. at 15–16.) As these issues do not affect my conclusions, I decline to discuss them here.

"'establish minimal guidelines to govern law enforcement.'" *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999) (quoting *Kolender*, 461 U.S. at 358). A statute violates the Due Process Clause if it "leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio*, 382 U.S. at 402–03.

After reviewing the Ordinance, I conclude that Plaintiffs' Complaint does not plead "enough facts to state a claim to relief that is plausible on its face" with respect to a void for vagueness claim.[12] *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The Ordinance provides a clear standard to determine violations—it references breed standards articulated by the American Kennel Club or the United Kennel Club. Denver, Colo., Ordinances § 8-55. The City of Denver keeps a copy of these standards on file at their office for reference by the public, *id.*, and the breed standards are available online at www.akc.org (American Kennel Club) and www.ukcdogs.com (United Kennel Club). Although the standards are somewhat scientific in scope, they are not so scientific that a person of ordinary intelligence would be unable to understand their meaning. The Ordinance, therefore, certainly specifies a normative standard to which members of the public can conform their conduct. *Hoffman Estates*, 455 U.S. at 495 n.7 (quoting *Coates v*, 402 U.S. a 614)

---

[12] Arguably, Plaintiffs' Complaint only alleges that the Ordinance is unconstitutionally vague because it does not provide fair warning to dog owners about what conduct is proscribed and does not allege vagueness due to discriminatory and arbitrary enforcement. (Compl. ¶¶ 50–54). However, I will address the latter issue because I find that even if Plaintiffs raised this challenge to the Ordinance in their Complaint, the facts alleged would be insufficient to state a claim for this aspect of vagueness.

(holding that a statute is unconstitutionally vague only if it articulates no normative standard at all); *Giaccio*, 382 U.S. at 402–03 (holding that a statute is unconstitutionally vague if it leaves the "public uncertain as to the conduct it prohibits"). Furthermore, enforcement of the Ordinance is constrained by the same breed standards; therefore, the standards also provide "minimal guidelines to govern law enforcement.'" *Morales*, 527 U.S. at 60 (quoting *Kolender*, 461 U.S. at 358). Therefore, as the statute, on its face, articulates standards by which the public is provided fair warning of the scope of the Ordinance and by which enforcement is constrained, I conclude that Plaintiffs cannot maintain their claims for vagueness.

4.    <u>Equal Protection</u>

Plaintiffs next claim that the Ordinance violates Equal Protection because Defendants coerce self-incriminating statements from dog owners who do not request an administrative hearing but do not coerce such statements from dog owners who do request an administrative hearing. Defendants argue that this claim must be dismissed because no allegedly coerced statement was used against any of the Plaintiffs. Plaintiffs respond that there is a classification regardless of whether the statement was used against a Plaintiff or not and no rationale at all has been articulated for such classification. I need not address these arguments, however, because I find Plaintiffs' claim completely lacking on its face.

The Fourteenth Amendment states that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "This provision creates no substantive rights. Instead, it embodies a

general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (citations omitted).  To determine the cosntitutionality of a classification, courts apply a standard of review ranging from rational basis to strict scrutiny, depending on the type of classification. *Clark v. Jeter*, 486 U.S. 456, 461 (1988).  However, to be subject to the general equal protection rule and, therefore, court scrutiny, a classification must be a *government* classification.  The allegations in Plaintiffs' Complaint do not articulate a government classification but rather a choice that an individual can make.  If the process is as Plaintiffs allege then an owner whose dog has been impounded pursuant to the Ordinance may choose between having an administrative hearing to determine whether the dog is a pit bull or admitting that the dog is a banned pit bull as defined in the Ordinance.[13]  As it is the choice of the owner and not a government classification, there is no basis for an equal protection claim because the Fourteenth Amendment only constrains state actions.  Therefore, Plaintiffs equal protection claim shall be dismissed.

5.    <u>Substantive Due Process</u>

Finally, Plaintiffs claim that the Ordinance violates their substantive due process rights because it deprives them of their liberty and property interests in their dogs.  Plaintiffs allege that they are forced to either surrender their dogs to

---

[13]  I note that the Ordinance itself does not require a person who does not request a hearing to sign a statement admitting that the dog is a pit bull and defined in the Ordinance.  However, Defendants appear to acknowledge in their reply brief that if the owner opts to forego an administrative hearing, the owner must "acknowledge that the dog is a pit bull."  (Reply at 8.)

individuals who reside outside Denver or have their dog destroyed "when there is no evidence that the animals posed a threat to public safety."  Defendants argue that Plaintiffs' claim must dismissed because the action of Defendants does not "shock the conscience" citing to *Camuglia v. City of Albuquerque. See* 448 F.3d 1214, 1223 (10th Cir. 2006) ("'The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.'" (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006))).  Plaintiffs respond that the standard for assessing substantive due process violations when the action is legislative is reasonableness citing to *Murphy v. Matheson. See* 742 F.2d 564, 575 (10th Cir. 1984) ("Unless a state law trammels fundamental personal rights, we are to presume that state legislatures have acted within their constitutional power and are to require only that the law 'bears a reasonable relation to the State's legitimate purpose. . . .'" (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 125 (1978))).  However, because I conclude that Plaintiffs' have not alleged a substantive due process violation, I need not reach the issue of what standard to apply.

The doctrine of substantive due process applies in two separate ways.  First, it prohibits a state from arbitrarily depriving a person of a protectable property interest.  *Nicols*, 506 F.3d at 969 ("[S]ubstantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." (citing *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000))); *Clark*, 168 F.3d at 1190 ("An arbitrary

deprivation of an individual's property right can violate the substantive component of the Due Process clause of the Fourteenth Amendment." (citing *Archuleta v. Colo. Dep't of Insts.*, 936 F.2d 483, 489 (10th Cir. 1991))).  "The impairment of a lesser interest . . . demands no more than a 'reasonable fit' between governmental purpose . . . and the means chosen to advance that purpose."  *Reno v. Flores*, 507 U.S. 292, 305 (1993).  Second, it prohibits "States from infringing *fundamental* liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest," *Lawrence v. Texas*, 539 U.S. 558, 593 (2003); *see also Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Generally, "in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted).

Plaintiffs allegations are insufficient to maintain a claim under either of these applications of the doctrine.  First, with respect to arbitrary deprivation, I note that, although pets are accorded property status, the owner's rights are qualified and subject to the police power of the state—in particular, the power of the state to protect the safety and welfare of the public.  *Clark*, 168 F.3d at 1188 (citing *Sentell*, 166 U.S. at 700–04); *Colo. Dog*, 820 P.2d at 653 (citing *Thiele*, 312 P.2d at 789 and *Stone*, 101 U.S. at 818).  Plaintiffs have alleged no facts that are sufficient to demonstrate that Defendants arbitrarily deprived Plaintiffs of this right.  In fact, as noted above, the Ordinance employs specific breed standards to determine whether

a dog is a pit bull.  I conclude, that an ordinance passed for the health and safety of the public that references specific breed standards and, if requested, holds a hearing to determine the application of those standards, is not, as a matter of law, an arbitrary deprivation of a person's property right, especially when that property right has been expressly held to be subject to the police power of the state.  *See Clark*, 168 F.3d at 1190 (holding that the state's taking of foxes from a citizen under a rabies testing statute was not arbitrary and, therefore, did not violate substantive due process).

Second, there is not a fundamental liberty interest involved in this case. Plaintiffs apparently argue that they have a fundamental liberty interest in the "human/companion animal bond."  (Resp. at 18.)   However, this is not one of the liberty interests that the Supreme Court has recognized as being protected by substantive due process.  Furthermore, I note again that both the United States Supreme Court and the Colorado Supreme Court have held that an owner's property interest in a dog is subject to the police power of the state for the protection of the health and safety of the public.  *Clark*, 168 F.3d at 1188 (citing *Sentll*, 166 U.S. at 700–04); *Colo. Dog*, 820 P.2d at 653 (citing *Thiele*, 312 P.2d at 789 and *Stone*, 101 U.S. at 818).  Therefore, as Plaintiffs have failed to sufficiently articulate a protectable liberty interest, their substantive due process claim must fail.

Accordingly, it is ordered:

1. Defendants' Motion to Dismiss the complaint (Docket No. 16) is granted.

2. Plaintiffs' procedural due process claim that the Ordinance denies them a pre-seizure hearing, vagueness claim, equal protection claim, and substantive due process claim are dismissed with prejudice.

3. Plaintiffs' procedural due process claims that the Ordinance denies them due process by summarily executing dogs, coercing waivers of due process rights and the privilege against self incrimination and using allegedly coerced statements to encourage guilty pleas or discourage jury trials are dismissed without prejudice for lack of standing.

4. Plaintiffs' Motion to Certify Class (Docket No. 36) is denied as moot.

5. Defendants may have their costs.

6. This case is terminated.


DATED at Denver, Colorado, on March 20, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge